Our third case for this morning, I'm going to assume because he's Haitian it's more less French, Hernel Silais against the Attorney General Jeff Sessions. And Mr. Espinoza, welcome to the court. Thank you. Good morning, Your Honors. My name is Josue Espinoza. I represent the petitioner, Mr. Hernel Silais. Your Honors, this case is about protecting a petitioner's right to submit evidence and ensuring that his legal arguments will be heard and understood. This morning we present three issues before this court. First, that the Board of Immigration Appeals committed legal error by failing to exercise discretion when it completely ignored arguments presented by Mr. Silais. So it's one of those arguments, I think you might want to start with the government's contention that you have abandoned in this court a challenge to the immigration judge's finding that Mr. Silais failed to show unwillingness or inability to protect. Because as I look at the immigration judge's decision, that's just an alternative ruling. The immigration judge basically is saying, well, in any event, I'm looking for inability. Right, Your Honors. And thank you for addressing that issue. But we're not arguing that the immigration judge erred in its fact-finding analysis, as this court is not permitted to engage in a fact-finding analysis of that issue. Well, what we can do, I mean, I found the page, it's A16. All this other discussion about things, so I guess it's one of those situations in which we review both the order of the immigration judge and the order of the board, because the board cited its In re Murano, I think that's the name of it, Murano case, Burbano, sorry. We reject the respondent's arguments and adopt and affirm the decision of the immigration judge, C. Matter of Burbano. So even if the in here, in the immigration judge's opinion, the immigration judge says, moreover, like even if I've been wrong about everything else, respondent has not shown that the government is unwilling or unable to protect him. Correct. So they say in your brief, you didn't contest that. And Your Honors, so we argue that the immigration judge reached that conclusion by way of legal error. So the respondent was incorrect in saying that we never argued that this fact-finding analysis of whether that evidence was sufficient corroboration, but rather we argued that they ignored it by way of legal error. That legal error being that the immigration judge ignored evidence that went directly to that issue. Why does that in this court, why does that count as legal error? It could be that failing to look at all of the evidence is a failure to apply the law of property, but why does that, why does it transform itself into a legal error? And we see this in a case, Mansour v. Inessa, also a case by the name of Iglesias v. McCasey. In Mansour, we get this standard that an agency is required to consider all legal issues raised and to announce its decision in sufficient terms for a reviewing court to perceive that it has heard and thought about the issues. So that's where we get a standard. Then we look to other case law, Iglesias for example, the immigration judge ignored direct evidence that went to an issue. But the judge does look at the question, whether the government was unwilling or unable, and happens to come to an adverse conclusion. The police protect him at one point. Now you may think that's crazy, I may even think that's crazy, but to say that they didn't encounter the issue and address it just isn't right. The immigration judge addressed the issue, ignored the evidence that went to the issue. So when we look at the immigration judge's reasoning, it reasoned that Mr. Saleh did not contact authorities. That's one of the reasons why the Haitian government was unable to protect him. The immigration judge also stated Mr. Saleh's testimony as the Haitian government has been improving since 2006. The immigration judge also stated that the assailants that attacked Mr. Saleh were eventually detained, however ignored evidence that went to that issue, namely Mr. Concanon's testimony. Mr. Concanon is a country conditions expert. He testified that the Haitian government is corrupt and ineffectual, and that he actually believed violence would continue to occur. But again, the immigration judge misunderstood that testimony completely. Also ignored in his testimony how he explained that it's reasonable for someone in Mr. Saleh's position not to contact authorities. And further, the immigration judge ignored the evidence that although the assailants were detained, they were immediately released from custody that same day. And there in lies the legal error, Your Honor, by ignoring this evidence as we've seen from precedent cases such as the Glacis immigration. Well, but I'm not, I'm very worried by the proposition that any time someone ignores evidence, it turns an evidentiary conclusion into legal error. That is not the way we, for example, have looked at the related question in asylum cases, whether there's been a change in country circumstances, for instance, or whether there are extraordinary reasons that have prevented somebody from filing for a year. I know those are not involved in this case, but I'm giving them as examples where maybe somebody's trying to get the immigration judge or the board to look at evidence, and for whatever reason the board doesn't happen to talk about that evidence, or the IJ doesn't. Right, Your Honor, so when we look at precedent case law, we see that these cases have been remanded where the immigration judge ignores probative evidence. Mr. Mespinosa, you keep using the term ignored. The IJ spent nearly two pages describing Kincannon's testimony in detail. In fact, he had a heading called the testimony of Brian Kincannon. You may disagree with where he comes from at the end, but how can you talk about ignoring it when we have that kind of specificity, which we quite often do not have from immigration judges? Your Honor, actually the details of that factual portion of the immigration judge's decision is what you're referring to, actually underscores the fact that it ignored the evidence in its analysis. It describes in detail his testimony, then in its analysis does not discuss these details and gets his testimony wrong. It stated that the Haitian government has been improving since 2006, but that is not what the Haitian government stated, or that is not what Mr. Kincannon stated about the When it analyzed the actual issue, these details never came up, Your Honor. And that's just one error by the immigration judge. We also see that the immigration judge erred by denying evidence that he attempted to submit. And this goes to the due process portion of the case, Your Honors. Now, to prevail on a claim of due process, Mr. Saleh must demonstrate that the error prejudices his case. Prejudice being defined as a violation that directly affects the outcome of the case. So how can we be sure that the evidence that was subsequently denied directly affect the outcome? We look to the immigration judge's decision. The immigration judge, in her decision, stated Mr. Saleh did not submit evidence from key parties. And I'll quote that language, key parties, including Mr. Frank Laguerre. And that's on appendix page 14, IJ page. She said that, but then if you're getting around to your complaint that she chose not to admit the late submitted evidence, I don't think there can be any doubt that it was late, because there is a schedule for getting evidence. And I think worse, she was concerned that Mr. Laguerre's evidence simply went to chain of custody, and that there was a dearth of evidence saying, yes, I can verify that Mr. Saleh was a particular target of the chimere, or the key pieces of evidence about the persecution. And so I'm not sure that, again, ignore is the right word. I mean, it's a legitimate point. The new stuff that he's offering isn't direct evidence of what happened to him in Haiti. So I want to touch on a couple of issues. You bring up this issue of timeliness with the Immigration Practice Manual, which does state that evidence must be submitted 15 days prior to review. However, Your Honors, that is an internal agency document. It may be supplanted by the U.S. codes. But the same thing is true in our district courts. Quite a few of the district judges have, in addition to the Federal Rules of Civil Procedure and whatever the local rules of the Northern District of Illinois may be, they'll have standing orders about the format in which they want things submitted, about how many days in advance, about meet and confer, about electronic discovery, all kinds of things that are of the same level of informality as this manual. And yet we say the district judges are entitled to enforce orderly procedures. Right. So to properly address this issue, we look to the language of the Real ID Act, Your Honors. And this is codified in Section 8 U.S.C. 1158. And in the Real ID Act, it states that where an immigration judge or where a trier of fact determines that additional evidence should be provided, then that evidence must be provided. So this indicates that an applicant may submit additional evidence when the proceedings are already underway. And we look to the second prong of that act. It states the evidence must be provided. So it puts an applicant in a position that they have to provide this evidence when it is required. Additionally, Your Honors, this court has held that there is no specific notice requirement from an immigration judge to tell an applicant, we require this information. Therefore, an applicant can only anticipate when evidence is, as I say, required. So your argument is basically under the Real ID Act, it does contemplate additional evidence and it would be very inefficient to require waiting for a motion to reopen for that new evidence to come in. Correct, Your Honor. And as an additional point, this court has held where evidence is submitted in a motion to reopen, an agency has a duty to consider that evidence. But you are correct in phrasing my argument. And Your Honors, just to touch on this prejudice point, we see that if we look to the trial court record, and I refer your attention to pages A.R. 292 through 299, the immigration judge questioned Mr. Saleh heavily on these identity documents from Haiti. Who obtained them? How they were obtained? Mr. Saleh responded that it was his brother-in-law, Frank Laguerre, that obtained these documents. The immigration judge was not satisfied with that response and continued the line of questioning pages 302 to 303 and again on pages 310 to 312. Therefore, it stands to reason that Mr. Saleh would attempt to submit that evidence to explain that issue. Your Honors, the immigration judge denied him the opportunity to submit that evidence. Then in its decision, she stated, Mr. Saleh did not submit evidence from key parties, including his brother-in-law. Therein lies the prejudice. We see how denying the evidence directly affected the outcome of the case. But that wasn't the only occasion, Your Honor. Mr. Saleh also attempted to submit an affidavit from Rose Rivera and the interpreter she used to communicate with him. That affidavit explains some inconsistencies in his statement. So this interpretation was in Creole, ultimately? Is he a French speaker or a Creole speaker? It's actually French Creole. Well, no, I know what they speak in Haiti, but there's just... If you're looking for an interpreter, let's say somebody from Paris isn't going to be the right interpreter if you're trying to get Port-au-Prince. Correct. And actually, in the affidavit submitted by Rose Rivera and the interpreter she used, it explains that there was a communication barrier, which did lead to some inconsistencies. So that's why Mr. Saleh attempted to submit those affidavits to explain the inconsistencies. But the immigration judge, again, denied that evidence. And then in its decision, again, on page, IJ page 10, stated, Mr. Saleh did not explain numerous inconsistencies. But in fact, he did try to do just that. And lastly, Your Honors, the immigration judge stated, Haiti is able to offer him protection because the candidate he supported was eventually elected president. But the immigration judge denied an article that went directly to this issue, explaining that these attacks are still occurring despite the newly elected president. So therein lies the prejudice. She denied the evidence, then denied the case in part because of this evidence. I do see I am into my rebuttal time. May I reserve the time for rebuttal? Certainly. Thank you. Ms. Allen. Good morning, Your Honors. May it please the court. Jeanette Allen for Respondent, the Attorney General. Your Honor. Can you answer a question for me, Ms. Allen? Sure. Does the Attorney General want to be Jeff Sessions, as the Department of Justice website indicates? Or does he want to be, as your brief indicates, Jefferson B. Sessions III? Jefferson B. Sessions III. That's his non-delitigation? That's what we've come down on as far as... There has been a lot of discussion in the office about this. Then how come his website says Jeff Sessions? I'm not sure. Perhaps... Do you think the Attorney General could dictate what would be... Right? And every press release he's released describes him as Jeff Sessions. Well, in our litigation, our pleadings are titled Jefferson B. Sessions III. So, it sounds like you're just saying, we disagree with the Attorney General about what his name is. I haven't personally spoken to the Attorney General about how he wants his name to be used, but I do know that's our office's position. Maybe if we get a Solicitor General someday, that person will resolve this. The Solicitor General has filed in the Supreme Court some documents using Jefferson B. Sessions III and some documents using Jeff Sessions. Perhaps they're having the same conversation. I'll take it back to the office. Maybe they're having it with the Attorney General. Great concern to your honors this morning. Well, it's not... I mean, we want to call him what he wants to be called, but something different every day is a little unsettling. Let me tell you, I have two concerns about the government's position here. First, reading Mr. Sillet's briefs as a whole, and certainly looking at some of the things he highlights in his reply brief, I think it's quite unfair to say that he didn't raise the question whether the Haitian government was able and willing to protect him. He talks about that. He gives many examples. You know, a token arrest where you let the person loose, you know, a day or so later is singularly ineffective, and this was one of these situations where the board doesn't say a word about this issue. It's all in the immigration judge's opinion, and so he didn't highlight it. And the other thing that worries me is the immigration judge seizes on things that she chooses to call inconsistencies, some of which seem to me utterly trivial, about whether he, you know, remembers the name of the third person for the organization for the integration of vulnerable orphans, for example, which is not anywhere near the core of his claim. And secondly, you know, this concern about his education sequence, where he goes off to the Dominican Republic for a year to be safe, and so it extends by a year how long it is before he gets a degree. It seems quite straightforward. So I'm very worried about this instinct for the capillary that the respondent has engaged, sorry, the government's engaged in, the government's now responded in our court, and also this forfeiture argument that you're making. With respect to the forfeiture argument, the petitioner's opening brief included a separate merits analysis, a second section in which they addressed past persecution on the merits. That section did not address whether the government was unable or unwilling to protect Mr. Solis. And the way they dealt with the issues was to separate them out, and so the government did the same in its response brief and separated. So do you have to have a heading? I mean, I can't read this brief without understanding that this is part of his argument. Why would he be bothering to tell you about the fact that it's not worth going to the police because they're corrupt and they're not going to do anything? Well, if Your Honor is not convinced by the waiver argument, there are plenty of bases here on which to uphold. And I'm thinking you really need to call it forfeiture. There would be no strategic reason to drop a point like that. So I think technically we're not really talking about standing up and saying, we hereby give up our argument about state action, basically, and most forfeiture. The manner in which they addressed state action was within their corroboration analysis, not within a section addressing the standards governing when the government is unable or unwilling to protect an applicant. Right, I agree with you. He doesn't have a heading for it. That's true. And that would be the basis for the waiver argument. But understanding, if Your Honor has a problem with that, there are plenty of bases here which fully support the agency's determination that Mr. Saleh failed to meet his burden of proof. And that's really what this case is about. As you pointed out, they have attempted to frame the issues here as ones of legal error. But what it boils down to is a quarrel with the weight afforded to the evidence that he did submit and the determination that he simply did not sufficiently corroborate his claims. But this is a direct petition for review. I mean, we can review, obviously deferentially, the findings of the immigration judge and the board. But if the findings are simply insupportable or if there are serious arguments that are unaddressed by one or the other, I understand that point. Maybe it needs another look. The arguments, as Judge Vaughn pointed out, this was a lengthy decision, 13 written pages, 6 full written pages summarizing the evidence here. You have pages of summary of Mr. Saleh's testimony, pages of summary of the expert's testimony, and a specific itemization of each piece of corroborative evidence presented. There is no... Yes. I think for me, the challenge in this case is the failure to allow the additional evidence. Now, is it your position that it was all cumulative? The position is, as the board noted, the evidence presented 2 days before the continued merits hearing was not corroborative of the specific incidents of harm that he alleged that he based his asylum claim on. Why did it need to be if, as Mr. Espinoza has argued, the flaw that the immigration judge highlighted, at least with respect to the identity documentation, the membership documents and the like, was more in the nature of chain of custody. So he looks at that, he says, okay, I've got to nail down the chain of custody, and he gets the very person who went and got all of these things, his brother-in-law, and tries to fix it. It's like you're saying, well, you know, he didn't address problem B, but nobody told him B was a problem. They said A was a problem, and that's what he was addressing. But that wasn't the flaw that the immigration judge identified solely. The immigration judge pointed out... Solely may be a word, but, you know, the immigration judge does criticize chain of custody. Well, in her decision, I'm sorry, in her decision, she focuses on the absence of evidence to corroborate respondents' individual story. Yes, she references the brother-in-law, but she notes that there were no, that the key parties in the case, including the brother-in-law who currently lives in the U.S. and who went to retrieve the documents, but ultimately, she's concerned about the absence of evidence supporting the central events underlying his claim of past persecution. Yes, in the hearing, there was some discussion of chain of custody, but her ultimate decision came down on, you've told me a story that happened to you in Haiti. You've given some inconsistent testimony about key incidents underlying that story. So what about his, I mean, a number of things would corroborate. His election observer ID would corroborate that he was an election observer at this thing. The political party card would corroborate his participation in the activities of that political party. His membership in the charity organization would actually also corroborate. So the immigration judge isn't even giving those things, not to mention the doctor's testimony of the scar that the doctor, Dr. Rowlings or somebody says, is consistent with a machete wound. And obviously, you don't have a scar the minute you have the machete wound, so the fact that the document's not contemporaneous is meaningless. Well, Your Honor, as this court has repeatedly noted, this court reviews deferentially under a substantial evidence standard, an immigration judge's determination that the evidence simply did not meet the burden of proof. In this case, the immigration judge pointed out the absence of statements from co-workers and family that could attest to the specific incidents of harm. And this was particularly necessary for two reasons. One, he only submitted one statement of support from a friend, and that statement conflicted with his testimony. So you throw that out, that leaves you with no statements of support. The I-589 asylum application lets a person know when you're submitting, when you're applying for asylum, you need statements of support for the specific details of your claim. As this court has noted, the Real ID Act itself, embedded within the Real ID Act, is notice to an applicant that corroboration may be necessary. No, no one disagrees. We know all about that. But if you try to give the corroboration, it seems that the other side of the coin is that... He didn't try to give it. That's the problem, Your Honor. Well, but he did. I'm saying that this was... He didn't give any evidence from people who could say, we know this happened to you. And notably, with regard to the brother-in-law in particular, the IJ asked him during the hearing, when did the brother-in-law leave Haiti? He said 2005, which means the brother-in-law was in Haiti at the time of the alleged incidents. And yet, the letter he provided contained nothing about those incidents. It was silent on the issue and simply addressed chain of custody. Yeah, he may not have known that that was what he was suing. Maybe he just needs a motion to reopen. The immigration judge who was there and able to observe Mr. Solais' demeanor, to observe his testimony, came down in finding that your testimony was vague. Your testimony was inconsistent. Do you seriously think that it would be safe for this man to go back to Haiti? Personally? The applicant did go back to Haiti at one point, Your Honor. It's worth noting that the applicant went to the Dominican Republic after many of the key incidents underlying his claim of past persecution. And he went back because he said he heard that things had gotten better. Ms. Allen, the board, it seemed to me, had concluded that the rejected evidence didn't address the weaknesses that the IJ found. But is that a fair conclusion as to what was proffered and not accepted by the IJ? It is a fair conclusion. The immigration judge focused on the absence of evidence to corroborate the specifics of his individual claim. And the evidence that was submitted in an untimely fashion was another affidavit, Mr. Solais' affidavit, and the interpretation. It was the brother-in-law's statement, which, as I've noted, was notably lacking in any statements regarding the harm, although he was in Haiti at the time that it allegedly occurred. Then, Rose Rivera, his former attorney, who discussed interpretation issues, the interpreter, who also discussed interpretation issues, and one article that discussed an armed robbery of a politician. None of these filled that central hole in Mr. Solais' case. This court reviews deferentially the agency's determination that an applicant has failed to meet his burden of proof because he didn't provide sufficiently credible, detailed, persuasive testimony and coupled that with necessary evidence corroborating his case. On this record, substantial evidence supports the agency's determination in this regard. The court should therefore deny the petition for review. All right. Thank you very much. Anything further, Mr. Espinoza? Yes. I'd like to address a few important issues raised by the respondent. The respondent stated that the immigration judge did not find Mr. Solais' testimony credible. I would like to say, despite the inconsistencies, the immigration judge did, in fact, find Mr. Solais' testimony credible. Also, the respondent argues that this is argued under a substantial evidence standard. This court may actually review claims of legal error de novo. We can look at 8 U.S.C. 1252 A.2.D. that says it can review claims of legal error, claims of law, constitutional claims. We know that, but you would agree, though, that if we think it's a factual claim before us, it's a deferential standard of review. If it's a factual claim. But again, Your Honor, many of the issues we're arguing is that the immigration judge reached its conclusions erroneously by not looking at the evidence that went to the issue. We understand that. Maybe you should explain to us the point that Judge Flom has been asking about why this additional evidence that was rejected would have made the difference. Okay, so we look to the trial court record, as I was discussing in my opening argument, that the immigration judge questioned Mr. Solais specifically on these issues. Therefore, it was reasonable for him to try to submit this evidence. And then when the immigration judge denied him the opportunity to submit that evidence, she reasoned that the lack of evidence was in part reasoning for denying his case. And again, I referred your attention to the immigration judge's page 10 where she stated he did not submit the affidavit from Frank Laguerre, that the Haitian government is willing and able to protect him, but again, ignored the country condition article, which describes a recent political attack on an OPL member, despite the newly elected president, Your Honor. And then I would also like to address another issue raised by the respondent, was that the evidence we attempted to submit did not corroborate specific aspects of the claim. When we do see that, when we look to a Seventh Circuit case, Adepte v. Gonzalez, that this court held, although an immigration judge denied evidence that didn't speak specifically to a claim, it was error to deny that evidence  in which it did make the applicant's claim more plausible. And that is what we have here with the evidence that was denied, the chain of custody issue, which also included, as you correctly stated, his OPL card, which corroborated some of the general claims to make his claim more plausible, Your Honors. All right, thank you very much. And we appreciate the willingness of Valparaiso to assist in this case. The case will be taken under advisement.